IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTHONY EDWARDS, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )   Case No. CIV-05-512-M |
| | ) |
| RON WARD, | ) |
| | ) |
|     Respondent. | |

**REPORT AND RECOMMENDATION**

    Petitioner, a state prisoner appearing *pro se*, brings this action under 28 U.S.C. § 2241 seeking a writ of habeas corpus. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consist with 28 U.S.C. § 636(b)(1)(B). Respondent has filed a response, and Petitioner has filed a reply, placing the matter at issue. For the reasons set forth hereafter, it is recommended that the petition be denied.

    Petitioner is currently in the custody of the Oklahoma Department of Corrections (DOC) incarcerated at the Lawton Correctional Facility pursuant to multiple convictions arising out of the District Court of Oklahoma County. However, Petitioner is not challenging these convictions or sentences; rather, he contends that his due process rights were violated as a result of a prison disciplinary hearing held while he was confined at the Dick Connor Correctional Center (DCCC), in which he was found guilty of individual disruptive behavior after he failed a drug test.

Facts and Procedural Background

    On November 18, 2004, Petitioner was charged with individual disruptive behavior, a violation of Code 02-2, a Class A offense. The disciplinary action was based

on an offense report submitted by DCCC Officer T. Newell.  Newell described the incident as follows:

> On 11-18-04 at approx 9:45 a.m. this R/O Sgt. Newell conducted a urinalysis test on I/M Edwards, Anthony #196613.  I/M Edwards tested positive for Methamphetamines in the first and second test administered. Latex gloves were used during the collection and testing of urine specimen.

Response, Ex. 2, page 1.  The offense report also indicated that Officer T. Reeves had witnessed the test.[1]  *Id.*  Petitioner received a copy of the report at 10:28 a.m. on November 19, 2004, and was advised of his rights in connection with the charge.  *Id.*  An investigator completed a report which was provided to Petitioner on November 19, 2004. Response, Ex. 2, page 2.  The report indicated that Petitioner was provided with copies of the evidence against him,[2] that Petitioner would not be assigned a staff representative and that Petitioner was notified the disciplinary hearing would be held on November 23, 2004.  *Id.*

The disciplinary hearing was held at approximately 9:40 p.m. November 23, and Petitioner was found guilty of individual disruptive behavior.  Response, Ex. 2, page 10. The disciplinary hearing officer stated that he relied on the following evidence for the finding of guilt:

> Two reporting officers' statements that I/M Edwards tested positive for methamphetamine in both tests administered.  Record of chemical abuse

---

[1] Officers Newell and Reeves completed separate incident reports of their observations of the test and the results.  Response, Ex. 2 at pages 3 and 4.

[2] The record shows that Petitioner received copies of: (1) the November 19, 2004, misconduct report written by Officer Newell; (2) the investigator's report; (3) a memo from medical personnel stating that Petitioner's medical records had been reviewed and that from that review it was determined that none of the medications Petitioner was taking could have caused a false positive result for methamphetamines; (4) the record of the chemical abuse testing; and (5) the incident reports completed by Officer Newell and Officer Reeves.  Response, Ex. 2, page 7.

>testing form indicates that I/M Edwards urine specimen control ID # 984832 tested positive for methamphetamine in both tests administered. Memo from health services indicates that I/M Edwards is not taking any medication that could register a positive test result for methamphetamine.

*Id.* As a result of the conviction, Petitioner lost 120 days of earned credits, was reassigned to Level One for 60 days and was assigned to disciplinary segregation for 20 days. *Id.*

Petitioner appealed and the head of the facility affirmed the conviction. Response, Ex. 3, pages 1-4. Petitioner appealed this decision to the DOC Director/Designee, and on February 15, 2005, the Designee concurred with the decision of the head of the facility and provided Petitioner a written statement of the Designee's reasons for this decision. Response, Ex. 3 at 5-8.

Petitioner challenges the results of the disciplinary proceeding, claiming that the evidence relied upon by officials to find him guilty of the charged offense is insufficient and unreliable because (1) although his medical records were checked, officials failed to ascertain whether any over the counter medications or canteen products generally available to the inmate population could have produced a false positive test result; (2) Officer Newell tampered with Petitioner's urine sample; (3) the drug testing was conducted in an unsanitary environment; (4) the chain of custody of the urine sample was inadequate; and (5) officials failed to photograph the test results. Petition at 3-5.[3] Petitioner alleges that these "numerous infractions" and prison officials' refusal to conduct an independent laboratory test of his urine sample violate the Due Process

---

[3]The undersigned notes that Petitioner has misnumbered the pages of the petition, as the petition skips from page number five to page number seven; for ease of reference, the undersigned has cited the page numbers as they appear on each page.

Clause. *Id.* at 5. In a separate claim, Petitioner also alleges that he was denied an impartial decisionmaker in the disciplinary process. Petition at 5-8.

Respondent contends that Petitioner received all the process to which he was entitled, that the disciplinary action was based on some evidence, and that Petitioner's claim regarding the bias of the decisionmaker is without merit. Respondent further contends that Petitioner is not entitled to habeas relief on the basis of alleged violations of prison policy.[4]

## Analysis

Prison disciplinary proceedings can be challenged under the Due Process Clause only if the resulting disciplinary action implicates a state-created liberty interest. *Stephen v. Thomas*, 19 F.3d 498, 501 (10th Cir. 1994). In Oklahoma, state law creates a liberty interest in earned credits. *See* Okla. Stat. tit. 57, § 138(A); *see also Waldon v. Evans*, 861 P.2d 311, 313 (Okla. Crim. App. 1993) ("the State has created a liberty interest in earned credits"). As a result, inmates who earn sentence credits are entitled to due process protection before such credits may be taken away. *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (inmate's liberty interest in earned credits cannot be

---

[4]The undersigned notes that generally, before bringing a claim for habeas corpus relief pursuant to 28 U.S.C. § 2241, a prisoner must exhaust available state court remedies. *See Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000). Petitioner alleges that pursuant to *Gamble v. Calbone*, 375 F.3d 1021 (10th Cir. 2004), there were no state court remedies in Oklahoma at the time he filed his petition to review a sufficiency of the evidence claim in a prison disciplinary proceeding, and thus the Court should consider his claims exhausted. Petition at 2. Respondent apparently concedes that the issues raised by Petitioner may be addressed on the merits.
   Beginning May 10, 2005, Oklahoma provided an avenue of redress through its statutory judicial review process for disciplinary proceedings. *See* Okla. Stat. tit. 57, § 564.1 (Okla. Sess. Laws, c. 159, § 5) (effective May 10, 2005). Whether or not Petitioner had a state court remedy available at the time he filed the instant petition, where, as here, the habeas petition can be denied on the merits, exhaustion is not required. *Montez*, 208 F.3d at 866.

denied without the minimal safeguards afforded by the Fourteenth Amendment's Due Process Clause). Petitioner was entitled to due process in his prison disciplinary hearing because he lost earned credits.

Although Petitioner was entitled to due process, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To meet the due process standard in an institutional disciplinary proceeding, an inmate must receive: (1) advance written notice of the disciplinary charge; (2) an opportunity, consistent with the institutional safety and correctional goals, to present witnesses and documentary evidence; and (3) a written statement of the evidence relied on and the reasons for any disciplinary action. *Wolff*, 418 U.S. at 563-67. If these requirements are met, and there is "some evidence" to support the decision, then procedural due process has been provided. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985).[5]

Judicial review to determine the existence of "some evidence" does not require "examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence." *Hill* at 455. Rather, the issue is simply "whether there is

---

[5]Petitioner contends that his disciplinary conviction may be upheld only if there is "substantial evidence" to support the offense. Petition at 3. In support of this assertion, Petitioner cites case law from another jurisdiction which is not binding on this Court. *Id.* Moreover, contrary to Petitioner's theory, the cited cases do not propose a different standard than that established by the Supreme Court in *Wolff* and *Hill*. See *Piggie v. McBride*, 277 F.3d 922, 925-26 (7th Cir. 2002) (applying *Wolff*'s due process requirements and holding presumption of correctness in 28 U.S.C. §§ 2254(d), 2254(e)(1) irrelevant to state prison superintendent's finding on appeal that prisoner failed to timely request surveillance videotape potentially containing evidence relevant to disciplinary charges); *Meeks v. McBride*, 81 F.3d 717 (7th Cir. 1996) (holding that the "some evidence" standard in *Hill* was not satisfied, based on a discrepancy in the identifying information on the face of a toxicology report and the absence of any explanation as to why prison disciplinary board disregarded exculpatory evidence).

any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. The disciplinary decision can be upheld even if the evidence supporting the decision is "meager," so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 457. *See Walker v. Edgell*, No. 93-3166, 1993 WL 371408, *2 (10th Cir. Sept. 23, 1993)[6] ("Mr. Walker should realize that the 'some evidence' standard does not require proof with certainty, proof beyond a reasonable doubt or even proof by a preponderance of the evidence.").

In this case, the record shows that Petitioner had adequate notice of the conduct with which he was accused, an opportunity to present evidence, and a written statement of the evidence relied upon and the reasons for the disciplinary action. Response, Exs. 2 and 3. Thus, the procedural requirements set forth by *Wolff, supra*, were met.

Petitioner alleges that the evidence supporting his disciplinary conviction is insufficient. Petition at 3. In connection with this claim Petitioner also alleges that the DOC failed to follow its own regulations in the disciplinary process.[7] To the extent Petitioner's sufficiency of the evidence claim is based on DOC's alleged failure to follow its own regulations, such claim fails to show a violation of due process. Prison

---

[6]Unpublished dispositions are cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

[7]In appealing his disciplinary conviction to the facility head, Petitioner cited DOC policy concerning Chemical Abuse Testing, OP-030134, and claimed that prison officials failed to follow this policy by ensuring a sufficient quantity of urine was collected, by failing to sufficiently label the urine sample, by failing to sufficiently maintain the testing equipment (test sticks) in a sanitary manner, and by failing to preserve the physical evidence by photocopying the test results. Response, Ex. 3, pages 1-3.
    A review of the DOC website shows that OP-030134 contains guidelines for administering drug testing, most of which were challenged by Petitioner in his disciplinary appeal process. DOC Regulation OP-030134 <http://www.doc.state.ok.us/Offtech/op030134.htm> (accessed October 18, 2006).

Case 5:05-cv-00512-M   Document 16   Filed 10/30/06   Page 7 of 12

regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Thus, "a failure to adhere to administrative regulations does not equate to a constitutional violation," and the relevant inquiry is not whether the procedures complied with the requirements of prison regulations. *Malik v. Kindt*, No. 95-6057, 1996 WL 41828,*2 (10th Cir. Feb. 2, 1996) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993)). Rather, as set out above, this Court's review of Petitioner's disciplinary proceeding is "limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary [hearing officer's] findings." *Mitchell*, 80 F. 3d at 1445. Thus, even if prison officials did not strictly follow DOC's regulations, Petitioner fails to show a federal due process violation in this regard. *See Godlock v. Fatkin*, No. 03-6003, 2003 WL 22954301, at *4 (10th Cir. Dec. 16, 2003) ("Petitioner does not have cognizable claim for federal habeas relief based solely on the failure of [the correctional facility] to follow particular regulations and directives [in the course of his disciplinary proceedings].") (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987)); *Kirkland v. Provience*, No. 94-6245, 1995 WL 377088, at *7 (10th Cir. Feb. 2, 1995) (finding Department of Corrections' regulations governing disciplinary proceedings do not generally create liberty interest in strict enforcement of those rules and failure to comply with such regulations is not a violation of due process); *Wilson v. Ramsey*, No. 9307012, 1993 WL 476422, at *2 (10th Cir. Nov. 19, 1993) (prison officials did not violate due process by failing to explain why an officer was believed over the petitioner although such a statement was required by prison policy).

Petitioner also claims that the evidence supporting his conviction is insufficient because the testing procedures rendered unreliable results. First, although Petitioner acknowledges that his medical records were reviewed for any indications for any bases for a false positive result, he alleges that the medical records check "did not substantiate all the other over the counter and canteen sale medications that were sold through the facility" and thus he concludes he was convicted on a false positive result. Petition at 4. Significantly, Petitioner does not allege that he informed prison officials or the investigator that he was taking any medications other than those known by prison medical staff or that he wanted to present evidence of such in his defense. Additionally, Petitioner does not allege in his petition that he was taking any specific over the counter medications at the time of drug test, nor does he list any canteen products he had purchased and taken that might have influenced the drug test. Petitioner's claim in this regard fails to allege a deprivation of the minimal process guaranteed by the Constitution.

Petitioner's claim that the positive reading resulted from Officer Newell's "tampering" with Petitioner's urine sample fails because it is conclusory and wholly lacking in supporting facts. In his disciplinary appeal, Petitioner claimed that while the urine test was being conducted, he "observed a small package of something in Mr. Newell['s] hand." Response, Ex. 3 at page 2. Petitioner further stated he made unsuccessful attempts to find out what was in the package by questioning staff and submitting a request to staff to Officer Newell. *Id.* As in his prison disciplinary appeal, Petitioner's claim of tampering is unsubstantiated, speculative, and fails to show that his due process rights were violated. Likewise, Petitioner's claims concerning the cleanliness

of the drug testing environment, a failure to photograph test results, and chain of custody are legally and factually insufficient and do not allege a violation of the minimum due process protections identified by *Wolff* and *Hill*. Rather, Petitioner's questioning of the reliability of the testing procedures under DOC policy is in effect a request that this Court reweigh the evidence. Such an evaluation is not a constitutional requirement. *Hill*, 472 U.S. at 455-456 ("Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Here, the record establishes that some evidence supports Petitioner's disciplinary conviction. In finding Petitioner guilty of individual disruptive behavior for use of methamphetamines, the disciplinary hearing officer stated that he relied on: (1) the reporting officers' statements that Petitioner tested positive for methamphetamines in two tests; (2) the record of chemical abuse testing form that showed Petitioner's urine sample twice tested positive for methamphetamines; and (3) a statement from health services which established that Petitioner was taking no medication that could register a false positive for methamphetamine. Response, Ex. 2, page 10.

Courts considering various testing methods used in the prison setting have consistently found similar testing methods sufficiently accurate such that a positive test result provides some evidence to meet the constitutional standard imposed in evaluating disciplinary actions. *See Thompson v. Owens*, 889 F.2d 500, 502 (3rd Cir. 1989)

("[p]ositive urinalysis results based on samples that officials claim to be appellant's constitute some evidence . . . . A chain of custody requirement would be nothing more or less than an 'independent assessment' into the reliability of the evidence, and *Hill* tells us, explicitly, that such a 'credibility' determination is not required . . . ."); *Webb v. Anderson*, 224 F.3d 649, 653 (7th Cir. 2000) ("Absent some affirmative indication that a mistake may have been made, we cannot say that the toxicology report and chain of custody form fail to qualify as 'some evidence' from which prison officials could conclude that Webb had used marijuana.") (citation omitted). The undersigned finds that the evidence considered by the disciplinary officer constitutes some evidence in support of the conclusion reached by the disciplinary hearing officer. *See Carter v. Workman*, 121 Fed. Appx. 793, 796 (10th Cir. Jan. 27, 2005) (hearing officer received and believed reporting officer's statements and statement constituted some evidence). Thus, Petitioner's claim of a due process violation based on insufficient evidence is without merit. *Hill*, 472 U.S. at 455-57.

Petitioner also alleges that his due process rights were violated because he was denied an impartial decisionmaker. Petition at 5. According to Petitioner, Officers Newell and Reeves were conducting the drug testing pursuant to orders given by Deputy Warden Lightle, and Lightle subsequently reviewed Petitioner's appeal of his disciplinary conviction. Petition at 7. Petitioner alleges that Lightle's actions amount to "direct involvement" and a conflict of interest in the disciplinary action, in violation of DOC policy and his due process rights. Petition at 5-6 (citing OP-060125).

"An impartial decisionmaker is a fundamental requirement of due process that is 'fully applicable' in the prison context." *See Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir.), *cert. denied*, 534 U.S. 860 (2004) (citing *Wolff* 418 U.S. at 492) (Marshall, J., concurring); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (recognizing due process requirement of factfinder's neutrality in prison disciplinary context and citing *Wolff*). As previously discussed, to the extent Petitioner's challenge is based on an alleged violation of a policy or regulation, such claim fails to state a claim of constitutional dimension. Rather, a due process challenge based on impartiality of a decisionmaker is generally limited to whether the prisoner was given a meaningful opportunity to be heard and whether discipline was imposed for an improper purpose. *See, e.g., Mitchell v. Maynard, supra*, 80 F.3d at 1446. In the instant case, Petitioner was afforded the fundamental right to be heard. Regardless of whether Deputy Warden Lightle ordered that drug testing be conducted at DCCC, Petitioner's chemical abuse test was administered twice and observed by two other correctional officers, and disciplinary hearing officer Daniel Owens considered the evidence and found it adequate to support the charge of individual disruptive behavior. "[B]ecause honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.'" *Gwinn*, 354 F.3d at 1220 (quoting *Tonkovich v. Kansas Board of Regents*, 159 F.2d 504, 518 (10th Cir. 1998)). That the deputy warden ordered drug testing which Petitioner failed and the also upheld the conviction on appeal fails to reflect any denial of Petitioner's due process rights. No such countervailing reason to conclude that the

factfinder was actually biased is present here. Petitioner's allegations of impartiality are without merit.

In conclusion, the record shows that Petitioner was afforded the procedures required by *Wolff, supra*, the disciplinary sanctions imposed upon him were supported by some evidence, and he was not denied an impartial decisionmaker. Accordingly, the undersigned recommends that the petition be denied.

## RECOMMENDATION

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for writ of habeas corpus be denied. Petitioner is advised of his right to object to this Report and Recommendation by the 20th of November, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The objections should be filed with the Clerk of this Court. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 30th day of October, 2006.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE